IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KIARA TJAN, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>THE BLIND PELICAN SEAFOOD HOUSE LLC, J. ANDREW STAFFORD, and J. NICOLE STAFFORD,<br><br>*Defendants*. | ) | Case No.: 5:26-cv-267<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT** |

Plaintiff Kiara Tjan ("Tjan"), on behalf of herself and all others similarly situated (collectively "Plaintiffs"), by and through undersigned counsel, hereby files this Collective and Class Action Complaint against Defendants The Blind Pelican Seafood House LLC ("The Blind Pelican"), J. Andrew Stafford ("Andrew Stafford"), and J. Nicole Stafford ("Nikki Stafford") (collectively "Defendants") pursuant to Rules 7 and 8 of the Federal Rules of Civil Procedure, and alleges as follows:

## NATURE OF COMPLAINT

1. This action is brought individually and as a class and collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq*., due to Defendants' systemic, company-wide policy, pattern, or practice of requiring tipped employees at their restaurant to participate in an illegal mandatory tip pool that included an owner and manager of the restaurant and kitchen employees who did not customarily and regularly receive tips from customers.

2. Defendants' illegal mandatory tip pool practices, as described herein, resulted in Defendants' failure to pay their tipped employees the applicable minimum wage rate for all hours

worked, the applicable overtime rate for all hours worked in excess of forty (40) each week, and all owed, earned, or promised wages, in violation of both the FLSA and the NCWHA.

3. This action is also brought individually for unlawful retaliation under the FLSA and the Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-240 *et seq.*, due to Defendants' retaliatory conduct in directing Tjan not to return to work, removing Tjan from the employee scheduling application, and removing Tjan from the employee group communication platform due to Tjan's good faith complaints about Defendants' unlawful wage practices under the FLSA and the NCWHA.

4. Defendants acted in direct violation of the FLSA, NCWHA, and REDA. Accordingly, Plaintiffs seek all unpaid wages, unpaid overtime compensation, illegally withheld and misappropriated tips, liquidated damages, treble damages, attorneys' fees and costs, pre- and post-judgment interest, and other damages permitted by applicable law.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

6. This Court has supplemental jurisdiction over the pendent state law claims under the NCWHA and REDA pursuant to 28 U.S.C. § 1367 because those state law claims arise out of the same nucleus of operative fact as the FLSA claims.

7. This Court has personal jurisdiction over Defendants because Defendants are domiciled, incorporated, and/or engaged in substantial activity within North Carolina.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events or omissions giving rise to these claims occurred in this District.

9. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

10. Tjan is a citizen and resident of Wake County, North Carolina.

11. The Blind Pelican is a North Carolina limited liability company with its principal place of business located at 120 Bass Lake Road, Holly Springs, NC 27540. The Blind Pelican owns and operates a seafood restaurant in Holly Springs, North Carolina.

12. Andrew Stafford is a Managing Member of The Blind Pelican. Together with Nikki Stafford, Andrew Stafford is a majority owner of The Blind Pelican and, upon information and belief, several other Triangle-area restaurants and bars. Andrew Stafford is a citizen and resident of Wake County, North Carolina.

13. Nikki Stafford is a Managing Member of The Blind Pelican. Together with Andrew Stafford, Nikki Stafford is a majority owner of The Blind Pelican and, upon information and belief, several other Triangle-area restaurants and bars. Nikki Stafford is a citizen and resident of Wake County, North Carolina.

14. During the time period relevant to this action, each Defendant was an employer, joint employer, or member of an integrated, common enterprise that employed Plaintiffs under the FLSA and NCWHA, in that each Defendant, or its agents, held or implemented the power, *inter alia*, to control Plaintiff's work performance and receive the benefit of Plaintiffs' labor.

## COVERAGE

15. At all times material to this action, Defendants were employers within the scope of the FLSA, 29 U.S.C. § 203(d), and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

16. At all times material to this action, The Blind Pelican directly employed Plaintiffs,

while Andrew Stafford and Nikki Stafford directly controlled, supervised, managed, set pay rates and methods of payment, had the power to hire and fire, maintained employment records, and issued payments for Plaintiffs.

17. At all times material to this action, Plaintiffs were individual employees within the scope of the FLSA, 29 U.S.C. §§ 206, 207, and the NCWHA, N.C. Gen. Stat. § 95-25.2(4).

18. The work performed by Plaintiffs was integral to all Defendants, and all Defendants exerted control over Plaintiffs' work.

19. At all times material to this action, Defendants operated an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(r), 203(s), in that said enterprise had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

20. At all times material to this action, Defendants operated an enterprise engaged in unified operations or common control by any person or persons for a common business purpose, as defined by the NCWHA, N.C. Gen. Stat. § 95-25.2(18).

21. Tjan obtained a right-to-sue letter from the North Carolina Department of Labor ("NCDOL"), Retaliatory Employment Discrimination Bureau, dated January 28, 2026, and files the instant REDA claim within 90 days thereof, in accordance with N.C. Gen. Stat. §§ 95-242 and 95-243. The right-to-sue letter is attached hereto as Exhibit A.

## FACTS

### *DEFENDANTS TOOK THE TIP CREDIT TO PAY PLAINTIFFS BELOW THE STATUTORY MINIMUM WAGE AND OVERTIME RATES*

22. Defendants employed Tjan as a server and bartender from on or about May 16,

2023, through January 24, 2025.

23. As a server and bartender, Tjan was responsible for interacting with customers, taking orders, preparing beverages, serving food and beverages, and corresponding customer-facing activities.

24. Tjan customarily and regularly received tips from customers.

25. For the first two weeks of Tjan's employment, Tjan was paid at an hourly rate of $8.50 per hour while she underwent training.

26. Upon the completion of her training on or about May 28, 2023, and through the termination of her employment with Defendants, Defendants paid Tjan at an hourly rate of between $2.13 and $3.13 per hour. Defendants relied on the tips received by Tjan as a server and bartender to satisfy the remainder of their statutory minimum wage obligations.

27. All Plaintiffs, as defined herein, were likewise paid hourly rates at or around $2.13 per hour, and well below the $7.25 per hour minimum wage rate, with Defendants relying on Plaintiffs' tips to satisfy the remainder of Defendants' statutory minimum wage obligations.

28. Tjan typically worked for Defendants at least five (5) days per week, and often worked over forty (40) hours per week. Plaintiffs also often worked for Defendants in excess of forty (40) hours per week.

29. When Plaintiffs worked over forty (40) hours in a single workweek, Defendants paid Plaintiffs at overtime rates at or around $3.20 per hour, relying on Plaintiffs' tips to satisfy the remainder of Defendants' statutory overtime obligations.

30. By compensating Plaintiffs below the statutory minimum wage and overtime rates and relying on Plaintiffs' tips to satisfy the remainder of their statutory minimum wage and overtime obligations, Defendants utilized the tip credit under the FLSA, 29 U.S.C. § 203(m), and

Plaintiffs' tips constituted wages.

***Defendants Required Plaintiffs to Participate in an Illegal Tip Pool***

31. Defendants required Plaintiffs to participate in a mandatory tip pool, into which Plaintiffs were required to contribute a portion of the tips they received from customers, in Defendants' sole discretion.

32. In addition to Plaintiffs, the mandatory tip pool included an individual who was an owner and manager of The Blind Pelican and individuals who did not customarily and regularly receive tips from customers.

33. One such tip pool participant, Joshua Self ("Self"), was, during the course of Tjan's employment, an owner of The Blind Pelican.

34. Self also served as the restaurant's bar manager. In that capacity, Self principally performed managerial and supervisory duties including, but not limited to, interviewing, selecting, and training employees, setting employees' work schedules and work assignments, directing employees' work, making staffing decisions, handling employee complaints and grievances, disciplining employees, managing social media and promotional content for the restaurant, and placing and managing liquor orders and inventory. Indeed, Self interviewed and hired Tjan, set Tjan's weekly schedule, and assigned Tjan to specific shifts and roles.

35. The mandatory tip pool additionally included Defendants' back-of-house kitchen employees who had no interaction with customers and who did not customarily and regularly receive tips from customers. These kitchen employees included, upon information and belief, cooks, dishwashers, expediters, and kitchen managers.

36. By including Self and kitchen employees in the mandatory tip pool, Defendants effectively used Plaintiffs' tips to reduce their business and employment expenses and derive

greater profit at Plaintiffs' expense. Defendants' inclusion of these employees in the tip pool, either individually or collectively, renders the tip pool invalid and unlawful.

37. Because the tip pool operated by Defendants was illegal, Defendants can no longer enjoy the benefits of the tip credit provision under the FLSA, and Plaintiffs are entitled to the full statutory minimum wage for all hours worked up to forty (40) each week, overtime at a rate of one and one-half (1.5) their owed hourly wages for all hours worked over forty (40) each week, and all tips surrendered to the unlawful tip pool.

***TJAN'S PROTECTED ACTIVITY AND DEFENDANTS' RETALIATORY CONDUCT***

38. On or about January 21, 2025, after performing research on the U.S. Department of Labor ("USDOL") and NCDOL websites, Tjan raised concerns with Davis Stafford, a manager at The Blind Pelican and the son of Andrew and Nikki Stafford, about the legality of Defendants' tip pool.

39. Tjan informed Davis Stafford that she believed that Defendants' tip pool was unlawful due to its inclusion of employees who did not customarily and regularly receive tips.

40. On or about January 22, 2025, Tjan followed up with Davis Stafford regarding her concerns, asking whether he had been able to speak with the owners about the issue she raised. Davis Stafford responded that he had spoken with Nikki Stafford and that he would talk to Tjan when she next came in for her shift.

41. Prior to Tjan's next scheduled shift, Tjan sent a text message to her co-workers notifying them that Defendants' tip pool practices were unlawful and that she planned to pursue the issue further, including submitting a complaint to the USDOL, if the issue could not be resolved.

42. Tjan's next scheduled shift was January 24, 2025. Tjan arrived at The Blind Pelican

at approximately 4:00 p.m. for her shift, prepared to both work and discuss her concerns. She brought authoritative printed materials issued by the USDOL and NCDOL with her, including Fact Sheet #15 ("Tipped Employees Under the Fair Labor Standards Act (FLSA)") issued by the USDOL, Fact Sheet #15B ("Managers and Supervisors Under the Fair Labor Standards Act (FLSA) and Tips") issued by the USDOL, a webpage maintained by the USDOL describing the FLSA's tip regulations, and a printout of 13 NCAC 12.0303, a regulation to the NCWHA that governs tips and tip credits. The materials included Tjan's annotations noting that Defendants took the tip credit, that they "ma[d]e us tip pool w/ non-tipped staff," including kitchen employees, and that they included a manager who was not permitted to participate in the tip pool. She also wrote, unambiguously, that "OUR TIP POOL IS INVALID on state & federal level."

43. That same day, Tjan met with Davis Stafford and Eric Willis, another manager, in a closed office at The Blind Pelican. During the meeting, Tjan reiterated her concerns about the illegality of the tip pool.

44. Davis Stafford asked Tjan whether she intended to work her shift. Tjan confirmed that she planned to work. The meeting concluded with the understanding that Tjan would work her shift and that her concerns about the tip pool would be taken up with the owners.

45. Later that evening, at approximately 6:09 p.m. on January 24, 2025, Davis Stafford sent Tjan a text message stating: "I think it's best if you don't come in till this is sorted out. Thanks." He followed with a second message: "Or till you speak with Andrew."

46. Defendants subsequently removed Tjan from Homebase, the employee scheduling application used by The Blind Pelican, effectively eliminating her access to her work schedule and preventing her from picking up or viewing shifts.

47. Defendants also removed Tjan from The Blind Pelican's employee group

communication platform on Homebase. Tjan was removed after she responded to a message from Nikki Stafford in the group chat by reiterating her concerns about the tip pool's legality.

48. In the group chat, Nikki Stafford characterized Tjan's good-faith complaints about the tip pool as the product of "bad information" and stated that Tjan's allegations were "mind blowing." Nikki Stafford separately texted employees stating that Tjan's allegations were "absurd" and "100% not true."

49. Tjan did not voluntarily resign from The Blind Pelican. Instead, Defendants directed Tjan not to return to work, removed her from the scheduling application, and removed her from the staff communication platform.

50. Taken together, Defendants' conduct constitutes adverse actions that would dissuade a reasonable worker from engaging in similar activity as Tjan, including complaining about unlawful wage practices.

51. Immediately prior to raising concerns about the legality of Defendants' tip pool, Tjan was viewed as a highly skilled and valued employee.

## FLSA COLLECTIVE ACTION ALLEGATIONS

52. Tjan brings Counts I and II of this Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and all similarly situated employees.

53. Similarly situated employees, for purposes of the FLSA collective action claims, are defined as follows:

> All individuals who were, are, or will be employed by The Blind Pelican as servers, bartenders, server assistants, hosts, food runners, or in any other tipped positions, who were paid a direct hourly wage of less than $7.25 per hour, and who participated in The Blind Pelican's tip pool, at any time within the three (3) year period prior to the commencement of this action, through the date of judgment or final disposition in this action.

54. Members of the FLSA collective were subject to common policies, patterns, or

practices that failed to lawfully compensate them under the FLSA for all work performed.

55. These similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records. As such, members of the FLSA collective should be permitted to pursue their claims collectively under 29 U.S.C. § 216(b).

56. Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of all Plaintiffs.

57. In accordance with 29 U.S.C. § 216(b), Tjan's Consent to File Suit as Plaintiff is attached hereto as Exhibit B. As this action proceeds, it is likely that other individuals will file consent forms and join as opt-in plaintiffs.

58. Tjan requests that she be permitted to serve as representative of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

## NCWHA CLASS ACTION ALLEGATIONS

59. Tjan brings Count III of this Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and all similarly situated employees.

60. Similarly situated employees, for purposes of the NCWHA class action claim, are defined as follows:

> All individuals who were, are, or will be employed by The Blind Pelican as servers, bartenders, server assistants, hosts, food runners, or in any other tipped positions, who were paid a direct hourly wage of less than $7.25 per hour, and who participated in The Blind Pelican's tip pool, at any time within the two (2) year period prior to the commencement of this action, through the date of judgment or final disposition in this action.

61. Common Questions Predominate: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common

questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all Plaintiffs have been harmed by Defendants' unlawful compensation practices. The common questions of law and fact include, but are not limited to, the following:

a. Whether Defendants' inclusion in the tip pool of an owner and manager of the restaurant rendered the tip pool unlawful;

b. Whether Defendants' inclusion in the tip pool of kitchen staff who did not customarily and regularly receive tips from customers rendered the tip pool unlawful;

c. Whether Defendants failed to pay Plaintiffs all of their owed, earned, or promised wages on their regular pay date pursuant to N.C. Gen. Stat. § 95-25.6 as a result of their unlawful tip pool; and

d. Whether Defendants lawfully compensated Plaintiffs under the NCWHA for all hours worked.

62. Numerosity: The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Tjan at this time, upon information and belief, The Blind Pelican employed at least three dozen putative class members during Tjan's employment period alone.

63. Typicality: The claims of Tjan are typical of the claims of each proposed class member, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendants, as alleged herein, of failing to pay employees all owed, earned, or promised wages pursuant to N.C. Gen. Stat. § 95-25.6. Defendants' compensation policies and

practices affected all putative class members similarly. Tjan and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

64. Adequacy of Representation: Tjan is able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Tjan and members of the proposed class. Tjan has retained counsel who is experienced and competent in both wage and hour law and complex class action litigation.

65. Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual class members may be small in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action.

66. Public Policy Considerations: Defendants violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

67. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of all Plaintiffs.

## CAUSES OF ACTION

### Count I
### Violation of the Fair Labor Standards Act, 29 U.S.C. § 206
### Brought by Tjan on Behalf of Herself and all Similarly Situated Employees
### Against All Defendants

68. Tjan hereby realleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

69. Under the FLSA, 29 U.S.C. § 206, employers must pay non-exempt employees a minimum wage of $7.25 per hour for all hours worked.

70. Under 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59, the FLSA permits certain employers to take a "tip credit" and count tips received by eligible employees toward the employer's minimum wage obligations, with a maximum credit of $5.12 per hour.

71. In order to lawfully utilize the tip credit, the FLSA requires, in part, that all tips received by each employee be retained by the employee, except in the instance of a valid tip pool.

72. A tip pool is only valid when it is comprised solely of employees who customarily and regularly receive tips.

73. When employees who do not customarily and regularly receive tips share in a tip pool, the tip pool is invalidated.

74. Defendants included in their mandatory tip pool employees who did not customarily and regularly receive tips, therefore invalidating Defendants' tip pool.

75. When a tip pool is invalidated, an employer can no longer enjoy the benefits of the tip credit provision under 29 U.S.C. § 203(m).

76. Without the benefits of the tip credit provision, Defendants must pay Plaintiffs an

hourly rate of at least the statutory minimum wage of $7.25 per hour for all hours worked, without any credit for the tips received by Plaintiffs.

77. Defendants willfully violated the FLSA under 29 U.S.C. § 255(a) when they knowingly or with reckless disregard operated an unlawful tip pool, required employees to contribute tips to the unlawful tip pool, and maintained the tip pool despite, among other things, being presented with USDOL and NCDOL materials and regulations that made clear the illegality of such practices. Plaintiffs are thus entitled to recover unpaid wages for a three-year period.

78. Defendants also cannot affirmatively defend their failure to pay the appropriate minimum wage rate as having been done in good faith and upon reasonable grounds, entitling Plaintiffs to liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. §§ 216(b), 260.

**Count II**
**Violation of the Fair Labor Standards Act, 29 U.S.C. § 207**
**Brought by Tjan on Behalf of Herself and all Similarly Situated Employees**
**Against All Defendants**

79. Tjan hereby realleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

80. Under the FLSA, 29 U.S.C. § 207, employers must pay non-exempt employees at one and one-half (1.5) their regular hourly rate for all hours worked over forty (40) in a single workweek.

81. Plaintiffs regularly worked greater than forty (40) hours per week.

82. Without the benefit of the tip credit provision, for the reasons stated above, Defendants must pay Plaintiffs for all overtime hours worked at a rate of one and one-half (1.5) their appropriate regular hourly wage of $7.25 per hour for all hours worked over forty (40) each workweek

83. Defendants willfully failed to pay Plaintiffs the proper amount for all hours worked over forty (40) in a single workweek for the reasons stated above. Plaintiffs are thus entitled to recover unpaid wages for a three-year period under 29 U.S.C. § 255(a).

84. Similarly, for the reasons stated above, Defendants cannot affirmatively defend their failure to pay appropriate overtime wages as having been done in good faith and upon reasonable grounds, entitling Plaintiffs to liquidated damages in an amount equal to the amount of unpaid overtime wages under 29 U.S.C. § 216(b).

**Count III**
**Violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.6**
**Brought by Tjan on Behalf of Herself and all Similarly Situated Employees**
**Against All Defendants**

85. Tjan hereby realleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

86. At all relevant times, Defendants have employed Plaintiffs within the meaning of the NCWHA.

87. The NCWHA mandates that employers "shall pay every employee all wages and tips accruing to the employee on the regular payday." N.C. Gen. Stat. § 95-25.6.

88. Tips received directly by Plaintiffs constituted wages because Defendants took the tip credit and treated them as wages, as described above. Defendants, however, failed to pay Plaintiffs all wages, instead using such wages to fund an illegal tip pooling arrangement, reduce their business and employment expenses, and derive greater profit at Plaintiffs' expense in violation of the NCWHA.

89. Consistent with the above, Defendants failed to pay Plaintiffs all owed, earned, or promised wages, in violation of N.C. Gen. Stat. § 95-25.6.

90. For the reasons stated above, Defendants cannot affirmatively defend their failure

to pay appropriate wages as having been done in good faith and upon reasonable grounds, entitling Plaintiffs to liquidated damages in an amount equal to the unpaid wages under N.C. Gen. Stat. § 95-25.22.

**Count IV**
**Violation of the Fair Labor Standards Act, 29 U.S.C. § 215**
**Brought by Tjan Individually**
**Against All Defendants**

91. Tjan hereby realleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

92. Pursuant to 29 U.S.C. § 215, an employer is prohibited from retaliating, or in any manner discriminating, against an employee for complaining or otherwise exercising their rights under the FLSA.

93. Tjan engaged in protected activity under the FLSA by complaining, in good faith, about Defendants' unlawful tip pool practices, including the participation of an owner, manager, and kitchen employees in the tip pool, and by citing and presenting to management the fact sheets and regulations issued by the USDOL and NCDOL describing the illegality of such practices.

94. Immediately after Tjan engaged in such protected activity, Defendants directed her not to return to work, removed her from the employee scheduling application, and removed her from the employee group communication platform. Defendants took these actions because of, and in retaliation for, Tjan's protected activity.

95. Defendants' retaliatory conduct constitutes adverse actions that would dissuade a reasonable worker from engaging in similar activity as Tjan, including complaining about unlawful wage practices.

**Count V**
**Violation of the Retaliatory Employment Discrimination Act, N.C. Gen. Stat. § 95-240, *et seq.***
**Brought by Tjan Individually**
**Against The Blind Pelican**

96. Tjan hereby realleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

97. REDA prohibits employers from "discriminat[ing] or tak[ing] any retaliatory action against an employee because the employee in good faith does or threatens to . . . [f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to . . . [the NCWHA]." N.C. Gen. Stat. § 95-241(a)(1).

98. Defendants' retaliatory conduct, including directing Tjan not to return to work, removing her from the employee scheduling application, and removing her from the employee group communication platform, was done in retaliation for Tjan's good-faith complaints about Defendants' unlawful wage practices, in direct violation of REDA.

99. Prior to filing the instant REDA claim, Tjan filed a timely written complaint with the NCDOL, Retaliatory Employment Discrimination Bureau, alleging that The Blind Pelican unlawfully retaliated against her in violation of REDA.

100. Tjan obtained a right-to-sue letter from the NCDOL, Retaliatory Employment Discrimination Bureau, dated January 28, 2026, and files the instant REDA claim within 90 days thereof, in accordance with N.C. Gen. Stat. §§ 95-242 and 95-243.

101. The Blind Pelican's retaliatory conduct was willful, as The Blind Pelican knew or exhibited reckless disregard as to whether its conduct violated REDA, particularly given that The Blind Pelican's retaliatory conduct was undertaken immediately after and in direct response to

Tjan complaining about Defendants' unlawful tip pool practices and citing to the fact sheets and regulations issued by the USDOL and NCDOL describing the illegality of such practices. Accordingly, Tjan is entitled to treble damages pursuant to N.C. Gen. Stat. § 95-243(c).

## **PRAYER FOR RELIEF**

WHEREFORE, Tjan, on behalf of herself and all those similarly situated, prays for relief and judgment against Defendants as follows:

A. The issuance of an order certifying this action as a collective action under the FLSA, and designating Tjan as a representative of all similarly situated employees for purposes of the FLSA collective;

B. The issuance of an order certifying this action as a class action under the NCWHA, and designating Tjan as a representative of all similarly situated employees for purposes of the NCWHA class;

C. An award of all unpaid wages due, and liquidated damages equal in amount, as provided by the FLSA, 29 U.S.C. § 216(b), and by the NCWHA, N.C. Gen. Stat. § 95-25.22;

D. An award of pre- and post-judgment interest at the applicable statutory rate, as provided by the FLSA, 29 U.S.C. § 216(b), and the NCWHA, N.C. Gen. Stat. § 95-25.22(a);

E. An award of all attorneys' fees and costs incurred as provided by the FLSA, 29 U.S.C. § 216(b), and the NCWHA, N.C. Gen. Stat. § 95-25.22(d);

F. For Tjan individually, an award of compensatory damages, economic losses, treble damages, attorneys' fees and costs as provided by REDA, N.C. Gen. Stat. § 95-243(c), and all other relief available for her claims of retaliation under the FLSA and REDA; and

G. Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Tjan hereby demands a trial by jury on all issues so triable.

Respectfully submitted this the 24th day of April, 2026.

*/s/ Michael B. Cohen*
Michael B. Cohen
N.C. State Bar No. 50629
COHEN EMPLOYMENT LAW
4801 Glenwood Avenue, Suite 269
Raleigh, NC 27612
Telephone: (919) 525-2700
mcohen@cohenemploymentlaw.com

*Counsel for Plaintiffs*